UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHEN CHAO,

Plaintiff,

-against-

ERIC HOLDER, JR., in his official capacity as
United States Attorney General; JANET
NAPOLITANO, in her official capacity as Secretary
of the Department of Homeland Security;
CHRISTOPHER SHANAHAN, individually and in
his official capacity as Field Office Director, ICE
Office of Detention and Removal Operations in New
York; MELVIN CHAVEZ, individually and in his
official capacity as Deportation Officer, Immigrations
and Customs Enforcement; OFFICER GASTON,
individually and in her official capacity as guard at the
Varick Street Detention Center; LIEUTENANT
SMITH, individually and in his official capacity as
guard at the Varick Street Detention Center;
GENERAL SERVICES ADMINISTRATION;
CORRECTIONS CORPORATION OF AMERICA;
and AHTNA TECHNICAL SERVICES, INC.

Defendants.

-------------------------------------------------------------X

CASE NO _____

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY 27 2010 ★

BROOKLYN OFFICE

**COMPLAINT**

**JURY TRIAL DEMANDED**

# 10   2432

# MAUSKOPF, J.

# BLOOM, M.J.

**PRELIMINARY STATEMENT**

1.   This is a civil rights action in which the plaintiff, CHEN CHAO, seeks relief for the

defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983,

and of rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States

Constitution, and for rights secured under the laws and Constitution of the State of New York.

2.   On March 11, 2009, the United States Immigration and Customs Enforcement ("ICE")

requested travel documents for Plaintiff from the Consulate of China.

3.   On or about June 19, 2009, Plaintiff was placed into the custody of ICE.  Under 8

U.S.C. § 1231(a)(1)(A), ICE had 90 days in which to remove Plaintiff. ICE officers issued notice for records review for Mr. Chen and conducted the statutorily mandated initial custody review on September 3, 2009. In the initial custody review, ICE officers decided to continue Mr. Chen's detention based on a lack of evidence establishing that he was not a flight risk or threat to society if released, and the pending status of travel documents from the Consulate of China.

4.   On December 16, 2009, 180 days had passed but plaintiff had not received a custody review.

5.   On January 8, 2010, ICE conducted a custody review and decided to continue Plaintiff's detention based on the expectation that a travel document would be issued for Mr. Chen by the Embassy of China in the reasonably foreseeable future. The expectation of Plaintiff's repatriation to China in the reasonably foreseeable future was irrational because DHS had already tried and failed to obtain travel documents in 2005, and the March 11, 2009 request had already been pending for nearly ten months.

6.   On January 28, 2010, the Embassy of China notified ICE that they could not issue a travel documents for Plaintiff.

7.   However, Defendants still kept Plaintiff in custody.

8.   On or about February 3, 2010, Mr. Chen was attacked in his sleep by a mentally incapacitated bunkmate, Yu Sheng Huang. Mr. Huang punched Mr. Chen in the head and eyes, causing Mr. Chen to suffer from a loss of vision in his left eye among other injuries.

9.   On February 16, 2010, Mr. Chen was released from custody under an Order of Supervision.

## JURISDICTION

10. This action arises under the Fourth, Fifth, Eighth and Fourteenth Amendments to the

United States Constitution and 42 U.S.C. § 1983.

11. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 1343(3), this being an action seeking redress for the violation of Mr. Chen's constitutional and civil rights.

12. Plaintiff's claim for declaratory and injunctive relief is authorized under 28 U.S.C. § 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Plaintiff further invokes this Court's pendant jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy. Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

13. The Complaint is within the Statute of Limitations.

14. The detention occurred on or about June 19, 2009 when Mr. Chen was released from criminal detention and placed in the custody of Immigration and Customs Enforcement ("ICE") and continued until February 16, 2010.

15. The assault in the Varick Detention Center occurred on or about February 3, 2010.

## VENUE

16. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(e)(2).

## PARTIES

17. Plaintiff is a native and citizen of China who is currently residing in Flushing, New York.

18. Defendant ERIC HOLDER, JR. is the United States Attorney General. Defendant Holder's principal place of employment is 900 Pennsylvania Avenue, NW, Washington, DC 20530-0001. Mr. Holder is sued in his official capacity.

19. Defendant JANET NAPOLITANO is the Secretary of the United States Department of Homeland Security ("DHS"). Ms. Napolitano is ultimately responsible for the administration of the DHS and the immigration laws, including enforcement and detention functions. Ms. Napolitano oversees ICE, the agency responsible for Mr. Chen's arrest and detention. Defendant Napolitano's principal place of employment is the U.S. Department of Homeland Security in Washington, DC 20528. Ms. Napolitano is sued in her official capacity.

20. Defendant CHRISTOPHER SHANAHAN, Field Officer Director of the New York Immigration and Custom Enforcement Detention and Removal Office in New York, is and at all times relevant herein an officer, employee, and agent of Immigration and Custom Enforcement. Defendant Shanahan is the supervisor of Deportation Officer Melvin Chavez, and oversees the detention facilities in the New York region. Defendant Shanahan's principal place of employment is 26 Federal Plaza, Rm. 1105, New York, NY 10278. Defendant Field Officer Director Christopher Shanahan is sued individually and in his official capacity.

21. Defendant MELVIN CHAVEZ, Deportation Officer, Office of Detention and Removal Operations, New York District, Immigration and Customs Enforcement, is and at all times relevant herein an officer, employee, and agent of ICE. Defendant Chavez was the officer immediately handling Plaintiff's case. Immigration and Custom Enforcement Deportation. Defendant Chavez's principal place of employment is 201 Varick Street, Rm. 1127, New York, NY 10014. Officer Melvin Chavez is sued individually and in his official capacity.

22. Defendant Officer GASTON was an officer assigned to guard the detainees at the Varick Detention Center on February 3, 2010. Defendant Gaston's principal place of employment is 1800 F Street, NW, Washington, DC 20405. Officer Gaston is sued individually and in her official capacity.

23. Defendant Lieutenant SMITH was an officer assigned to guard the detainees at the Varick Detention Center on February 3, 2010. Defendant Smith's principal place of employment is 1800 F Street, NW, Washington, DC 20405. Lieutenant Smith is sued individually and in his official capacity.

24. Defendant GENERAL SERVICES ADMINISTRATION ("GSA") is a procurement and property management agency that owns the property located at 201 Varick Street, New York, NY. GSA is located at 1800 F Street, NW, Washington, DC 20405.

25. Defendant CORRECTIONS CORPORATION OF AMERICA ("CCA") managed the detention facility known as the Varick Street Detention Center. CCA is located at 10 Burton Hills Boulevard, Nashville, TN 37215.

26. Defendant AHTNA TECHNICAL SERVICES, INCORPORATED ("ATSI") provided operations services, including personnel, management, equipment, and supplies to the Varick Street Detention Center. ATSI is located at 560 E. 34th Avenue, Suite 300, Anchorage, Alaska 99503.

## FACTS

27. Mr. Chen was first taken into ICE custody on February 25, 2005 after an Immigration Judge ordered Mr. Chen excluded by order dated February 28, 2001. Since travel documents could not be issued for Mr. Chen, he was released pursuant to an Order of Supervision on December 27, 2005.

28. In June 2009, ICE encountered Mr. Chen while he was incarcerated for a violation of probation. On June 19, 2009, the Order of Supervision was revoked and Mr. Chen was taken into ICE custody again.

29. Mr. Chen's detention was pursuant to the final order of removal dated February 28,

2001.

30.     ICE officers issued notice for records review for Mr. Chen and conducted the statutorily mandated initial custody review on September 3, 2009. ICE officers decided to continue Mr. Chen's detention based on a lack of evidence establishing that he was not a flight risk or threat to society if released, and the pending status of travel documents from the Consulate of China.

31.     ICE submitted its request for travel documents for Mr. Chen to the Chinese Consulate in New York on March 11, 2009.

32.     ICE's request for travel documents included copies of Mr. Chen's birth certificate, passport, and declaration of identity application.

33. On December 16, 2009, 180 days had passed but plaintiff had not received a custody review.

34.     When defendants finally conducted a custody review of Mr. Chen's detention on January 8, 2010, ICE officers again determined to continue the detention based on the expectation that travel documents would be issued for Mr. Chen, despite their failure to obtain travel documents in 2005, and the fact that their March 11, 2009 request for travel documents had been pending for approximately 10 months.

35. On January 28, 2010, the Embassy of China notified ICE that they could not issue a travel documents for Plaintiff.

36. However, Defendants still kept Plaintiff in custody.

37.     Mr. Chen was held without bond at the Varick Street Detention Facility, located at 201 Varick Street, New York, New York 10014, until February 16, 2010, when he was finally

released under an Order of Supervision.

38. Prior to Mr. Chen's release, he was assaulted by a mentally incapacitated bunkmate, Yu Sheng Huang. On February 3, 2010, Mr. Chen was attacked in his sleep by Mr. Huang, who punched Mr. Chen in the head and eyes.

39. The injuries caused Mr. Chen to temporarily lose sight in his left eye.

40. Thereafter, Mr. Chen's vision became blurry and he suffered from pain and sensitivity in his left eye.

41. Mr. Chen was diagnosed with a traumatic vitreous hemorrhage in his left eye.

## STATEMENT OF CLAIMS

### FIRST COUNT
Violation of Fifth Amendment Due Process: Unlawful Imprisonment

42. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 41 as if fully set forth herein.

43. Each and every incident involved detention officers of the Department of Homeland Security.

44. Defendants were at all times relevant herein an officer, employee, and agent of the ICE, an agency of the Department of Homeland Security.

45. The statutory removal period of 90 days began on or about June 19, 2009 when Plaintiff was placed into the custody of ICE.

46. On March 11, 2009, ICE submitted its request for travel documents for plaintiff to the Chinese Consulate in New York.

47. The request for travel documents included copies of plaintiff's birth certificate, passport, and declaration of identity application.

48. ICE officers issued notice for records review for plaintiff and conducted the

statutorily mandated initial custody review on September 3, 2009.

49. ICE officers decided to continue to detain plaintiff based on a lack of evidence establishing that he would be neither a flight risk nor a threat to society if released, and the pending status of travel documents from the Consulate of China.

50. On or about January 8, 2010, ICE conducted a subsequent custody review of plaintiff's detention

51. On or about January 8, 2010 ICE officers again decided to continue the detention based on the expectation that travel documents would be issued for plaintiff.

52. Thus, plaintiff remained detained despite ICE's failure to obtain travel documents in 2005, and the fact that their March 11, 2009 request for travel documents had been pending for approximately 10 months.

## SECOND COUNT
Violation of Fourteenth Amendment due to Deprivation of Liberty Interest in Personal Security

53. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 52 as if fully set forth herein.

54. While Plaintiff was detained by ICE, he was placed in the same cell as a mentally incapacitated detainee, Yu Sheng Huang.

55. Various detainees in the same cell had complained to ICE officials that Huang was mentally disturbed and a danger to their safety.

56. The guards knew of the risk posed by Huang but refused to remove Huang from the cell.

57. On February 3, 2010, Huang attacked plaintiff in his sleep, punching him in the head and eye area.

58. The assault caused plaintiff to temporarily lose sight in his left eye.

59. Plaintiff continues to suffer from blurry vision and pain and sensitivity in his left eye.

60. On February 25, 2010, plaintiff was diagnosed with a traumatic vitreous hemorrhage in his left eye.

61. The conditions under which plaintiff was incarcerated constituted an unjustified intrusion on plaintiff's personal security.

## THIRD COUNT
Violation of Eighth Amendment Prohibition Against Cruel and Unusual Punishment

62. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 61 as if fully set forth herein.

63. Defendants had a responsibility to provide a safe environment for plaintiff.

64. Defendants did not employ reasonable measures to protect plaintiff from violence by other detainees.

65. While plaintiff was detained by ICE, he was placed in the same cell as a mentally incapacitated detainee, Yu Sheng Huang.

66. Various detainees in the same cell had complained to ICE officials that Huang was mentally disturbed and a danger.

67. The guards were aware of the risk posed by Mr. Huang but refused to remove Huang from the cell.

68. Upon information and belief, Lieutenant Smith said that the issue was not ICE's problem because there was not a segregated place to house mentally incapacitated detainees.

69. On February 3, 2010, Mr. Huang attacked Mr. Chen in his sleep, punching him in the head and eye area.

70. Upon information and belief, earlier in the day on February 3, 2010, Huang attempted

to assault Mr. Chen but was restrained by another detainee by the name of Talipon Bakhrom.

71. Upon information and belief, Mr. Bakhrom told Officer Gaston about the incident, but Officer Gaston failed to act on the complaint.

72. The assault caused plaintiff to temporarily lose sight in his left eye.

73. On or about February 25, 2010, plaintiff was diagnosed with a traumatic vitreous hemorrhage in his left eye.

74. The conditions under which plaintiff was incarcerated posed a substantial risk of serious harm.

75. Placing mentally incapacitated detainees with the general population created a dangerous situation.

76. Placing violent detainees with the general population created a dangerous situation.

77. Plaintiff was injured because the defendants failed to isolate the mentally infirm detainee

78. The defendants' failure to separate mentally incapacitated detainees from the general population permitted the attack to occur.

79. The failure to remove the known risk demonstrates the defendants' deliberate indifference to plaintiff's safety.

## FOURTH COUNT
### Violation of Fifth Amendment Due Process for Failure to Follow ICE's own Procedures

80. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 79 as if fully set forth herein.

81. During all relevant times, defendants were bound by Detention Standards, which establish uniform policies and procedures for the safe, secure, and humane treatment of foreign

nationals in ICE custody.

82. The Detention Standards require the protection of the detainees from harm by ensuring that facility security is maintained and that events that pose a risk of harm are prevented.

83. Implementation of the Detention Standards is mandatory for all ICE Service Processing Centers, Contract Detention Facilities, and state and local government facilities that house ICE detainees for more than 72 hours.

84. The detention facility was responsible for the secure detention and personal welfare of plaintiff.

85. While plaintiff was detained by ICE, he was placed in the same cell as a mentally incapacitated detainee.

86. Various detainees had complained to ICE officials that the mentally incapacitated detainee was mentally disturbed and a danger to their safety.

87. The guards knew of the risk but failed to remove the mentally incapacitated detainee.

88. On February 3, 2010, plaintiff was attacked in his sleep by the mentally incapacitated detainee.

## FIFTH COUNT

Fifth Amendment Due Process Violation Due to Conditions of Confinement

89. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 88 as if fully set forth herein.

90. Defendants had a responsibility to provide a safe environment for plaintiff.

91. When plaintiff was detained by ICE, he was placed in a cell with approximately 54 other detainees.

92. Plaintiff spent nearly the entire day confined to the cell, with breaks only for meals and for one hour of exercise daily.

93. Plaintiff was placed in the same cell as a mentally incapacitated detainee, Huang.

94. Various detainees in the same cell had complained to ICE officials that Huang was mentally disturbed and a danger.

95. The guards were aware of the risk posed by Huang but refused to remove Huang from the cell.

96. On February 3, 2010, Huang attacked plaintiff in his sleep, punching him in the head and eye area.

97. Upon information and belief, earlier in the day on February 3, 2010, Huang attempted to assault plaintiff but was restrained by another detainee.

98. Upon information and belief, that detainee told Officer Gaston about the incident, but Officer Gaston failed to act on the complaint.

99. The assault caused plaintiff to temporarily lose sight in his left eye.

100. On February 25, 2010, plaintiff was diagnosed with a traumatic vitreous hemorrhage in his left eye.

101. The conditions under which plaintiff was incarcerated posed a substantial risk of serious harm.

102. By placing plaintiff in a cell with a known mentally incapacitated and violent person, defendants did not employ reasonable measures to protect plaintiff from violence by other detainees.

103. Defendants permitted the attack to occur by failing to isolate mentally infirm detainees from the general population.

## SIXTH COUNT
### Violation of Eighth Amendment: Inadequate Medical Care

104.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 103 as if fully set forth herein.

105.    Due to the February 3, 2010 attack, plaintiff suffered serious injuries to his left eye and head area, which caused severe pain and permanent injury.

106.    The injury to his left eye was so severe that it required surgery to correct the damage.

107.    On February 3, 2010, plaintiff was given an ice bag and Tylenol.

108.    On February 4, 2010, plaintiff was sent to nearby hospital where he received a CAT scan and eye examination.

109.    The hospital scheduled plaintiff to return the following week, but defendants failed to bring plaintiff to the appointment.

110.    Plaintiff did not receive any additional treatment.

111.    However, defendants brought plaintiff to their office to take photographs of plaintiff's injuries.

112.    The prison guards were aware of the serious injuries but deliberately failed to provide plaintiff with adequate medical care.

113.    The prison doctors were aware of the serious injuries but deliberately failed to provide plaintiff with adequate medical care.

114.    As a result of the deliberate indifference to plaintiff's serious injuries, plaintiff suffered permanent injuries.

## SEVENTH COUNT
### Violation of 5th Amendment: Overcrowding

115. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 114 as if fully set forth herein.

116. Plaintiff was an unconvicted detainee.

117. Plaintiff was in an isolated cell, cell B-1, with approximately 54 other detainees.

118. Other than going to the mess hall and to the exercise room for one hour daily, plaintiff was confined to the cell for the entire day.

119. Plaintiff was confined in ICE custody from June 19, 2009 until February 16, 2010.

120. The overcrowding engendered violence and psychiatric problems.

121. Plaintiff was attacked while confined in his cell by a mentally incapacitated detainee.

122. These conditions amounted to a punishment as prohibited by the Fifth Amendment.

## EIGHTH COUNT
### Conspiracy to Interfere with Civil Rights: 42 USCA § 1983

123. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 122 as if fully set forth herein.

124. Officer Gaston and Lieutenant Smith are in conspiracy with each other and with other guards at the detention facility to conceal the violations of ICE policy that resulted in plaintiff's injuries.

125. While plaintiff was in ICE custody, he was housed in the same cell as a mentally incapacitated inmate

126. Multiple detainees had informed detainees numerous times of the risk posed by Mr.

Huang due to his mental instability.

127.   The guards knew of the risk posed by Mr. Huang but refused to remove Huang from the cell.

128.   Upon information and belief, Lieutenant Smith said that the issue of isolating Huang was not ICE's problem because there was not a segregated place to house mentally incapacitated detainees.

129.   Upon information and belief, in the morning of February 3, 2010, Huang attempted to assault plaintiff, but he was restrained by another detainee by the name of Talipon Bakhrom.

130.   Upon information and belief, Mr. Bakhrom told Officer Gaston about the incident, but Officer Gaston failed to act on the complaint.

131.   On February 3, 2010, Huang attacked plaintiff.

132.   The assault resulted in permanent damage to plaintiff's left eye.


## NINTH COUNT
### Violation of 18 USCS § 4081: Classification and treatment of prisoners

133.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 132 as if fully set forth herein.

134.   Defendants failed to properly classify and segregate the detainees based on their mental condition.

135.   If defendants had taken into consideration the character and mental condition of the detainees when housing them, Huang would not have been in a general population cell

136.   Huang was mentally incapacitated.

137.   Huang was mentally unstable.

138. Huang posed a danger to the other detainees.

139. Defendants failed to provide Huang with the individualized treatment that he needed.

140. Defendants failed to provide plaintiff the individualized care that he needed by failing to separate Huang from plaintiff.

## TENTH COUNT
### Violation of 8 CFR 212.5(b)

141. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 140 as if fully set forth herein.

142. ICE parole regulations allow the parole of detainees who have serious medical conditions for whom continued detention would not be appropriate.

143. ICE parole regulations allow the parole of detainees whose continued detention is not in the public interest.

144. Detainee Huang should not have been detained in the detention facility because he had a serious medical condition that made continued detention inappropriate in that his mental incapacity was likely to lead to—and indeed resulted in—harm to other detainees.

145. Huang should have been detained separately from the general population.

## ELEVENTH COUNT
### Violation of Substantive Due Process: Insufficient Staffing and Training

146. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 145 as if fully set forth herein.

147. The Varick Street Detention Center was privately-operated.

148. Defendants had a duty to protect plaintiff.

149.   The guards were neither properly trained nor instructed on how to properly maintain the facility and its detainees.

150.   Defendants come into regular contact with mentally incapacitated persons.

151.   Defendants failed to hire guards qualified to handle detainees with mental illness.

152.   Defendants were not trained on how to sufficiently deal with mentally incapacitated persons.

153.   Defendants were not trained on how to sufficiently handle violent detainees.

154.   Defendant's lack of training was demonstrated by their failure to segregate.

155.   Defendant's lack of training was demonstrated by their ignoring repeated warnings of danger.

156.   Defendant's lack of training was demonstrated by their ignoring the specific warning given earlier during the day of the attack.

## TWELFTH COUNT
### Violation of Substantive Due Process: Failure of Duty to Act and Protect

157.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 156 as if fully set forth herein.

158.   Plaintiff was taken into ICE custody against his will.

159.   Defendants had the responsibility to assume responsibility for plaintiff's safety

160.   Defendants failed to provide for the basic human needs of plaintiff in that they failed to provide for his reasonable safety

161.   Defendants failed to separate mentally infirm detainees from the general population.

162. Defendants were aware of the danger posed by Detainee Huang yet failed to act to protect plaintiff.

163. Defendants ignored a previous attempted attack on plaintiff by Huang.

164. On or about February 3, 2010, Huang assaulted plaintiff, resulting in serious injury

## THIRTEENTH COUNT
### Violation of New York State Correction Law § 137

165. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 164 as if fully set forth herein.

166. Defendants did not employ proper classification procedures for the Varick Street Detention Center.

167. Defendants failed to consider the mental and emotional condition of Huang.

168. Defendants ignored the danger Huang presented to other detainees.

169. Defendants failed to review Huang's medical history.

170. Defendants failed to treat Huang.

171. Defendants failed to take measures necessary for the safety security and control of the facility and the maintenance of order in that they failed to isolate mentally incapacitated detainees from the general population

172. Defendants failed to remove Huang from the cell after he had demonstrated unstable and dangerous behavior

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order the convening and empanelling of a jury to consider the merits of the claims herein;

2.    Grant compensatory damages for the plaintiff in the amount in an amount to be determined at trial;

3.    Grant punitive damages for the plaintiff against the individual defendants, jointly and severally, in an amount to be determined at trial;

4.    Order defendants, jointly and severally, to separate mentally disabled detainees from the general population;

5.    Order defendants, jointly and severally, to provide adequate medical care to individuals injured while in detention;

6.    Order defendants, jointly and severally, to adhere to the statutorily mandated 90 and 180 days in which to remove detainees; and

7.    Award Plaintiff the costs involved in maintaining this action and reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

8.    Grant such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: Queens, New York
        May 2Ч , 2010

C. Jean Wang, Esq.
Wang Law Office, PLLC
*Attorneys for Petitioner*
36-25 Main St. 3rd Fl.
Flushing, New York 11354
Tel: (718) 353-9264
Fax: (718) 353-2099