UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHEN CHAO,

    Plaintiff,                                          **MEMORANDUM AND ORDER**
                                                               10-CV-2432 (RRM)(LB)

        - against -

ERIC HOLDER, JR., in his official capacity as
United States Attorney General; JANET
NAPOLITANO, in her official capacity as
Secretary of the Department of Homeland
Security; CHRISTOPHER SHANAHAN,
individually and in his official capacity as Field
Office Director, ICE Office of Detention and
Removal Operations in New York; MELVIN
CHAVEZ, individually and in his official
capacity as Deportation Officer, Immigrations
and Customs Enforcement; OFFICER GASTON,
individually and in her official capacity as guard
at the Varick Street Detention Center;
LIEUTENANT SMITH, individually and in his
official capacity as guard at the Varick Street
Detention Center; GENERAL SERVICES
ADMINISTRATION; CORRECTIONS
CORPORATION OF AMERICA; and AHTNA
TECHNICAL SERVICES, INC.

                             Defendants.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Chen Chao[1] initiated this civil rights action for monetary and equitable relief against a number of federal officials, federal agencies, private entities, and private individuals alleging various constitutional violations arising out of an injury allegedly inflicted by a fellow detainee at a privately operated U.S. Immigration and Customs Enforcement ("ICE") detention facility in Manhattan.  Presently before this Court is the motion for judgment on the pleadings

---

[1] Although plaintiff is listed as "Chen Chao" in the caption, Chen appears to be his surname.  (*See, e.g.*, Compl. (Doc. No. 1) ¶¶ 3, 8–9, 11, 14; Def.'s Br. (Doc. No. 48) at 2 (ECF Pagination).)  Therefore, the Court will refer to plaintiff as "Chen" throughout this Memorandum and Order.

1

pursuant to Federal Rule of Civil Procedure 12(c) brought by defendants Ahtna Technical Services, Inc. ("Ahtna") and Valerie Gaston. For the reasons stated below, defendants' motion is GRANTED and all claims are DISMISSED.

## BACKGROUND[2]

The facts underlying this litigation are more fully set forth in the Court's December 29, 2011 Order in this case, familiarity with which is assumed. *See Chen v. Holder et al.*, No. 10-cv-2432, 2011 WL 6837761, at *1–2 (E.D.N.Y. Dec. 29, 2011). In brief, Chen is a native citizen of the People's Republic of China who, from approximately June 19, 2009, until February 16, 2010, was in the custody of ICE and detained at the Varick Street Detention Facility. (*See* Compl. (Doc. No. 1) at ¶¶ 3, 9, 14, 17, 28, 37.) At the time, the Varick Street Detention Facility was operated by Ahtna, a private entity under contract with ICE, which employed Gaston as a guard in the facility. (*See id*. at ¶¶ 22, 26, 147.)

While at the Varick Street Detention Facility, Chen was housed in the same room as 54 other detainees. (*Id*. ¶ 91.) On February 3, 2010, while he was sleeping, Chen was attacked by Yu Sheng Huang, another detainee whom Chen alleges was "mentally incapacitated." (*See id*. ¶¶ 8, 38, 54.) Huang punched Chen in the head and eyes, which caused Chen to temporarily lose sight in his left eye. (*See id*. ¶¶ 8, 38–39.) Thereafter, Chen's vision became blurry, he suffered from pain and sensitivity, (*id*. ¶ 40), and was later diagnosed with traumatic vitreous hemorrhage in his left eye, (*id*. ¶ 41). Chen alleges that Huang attempted to assault him earlier that day but was restrained by another detainee, and that Gaston was told about the incident but failed to act

---

[2] The facts, which are assumed to be true for the purposes of this motion, are taken from the complaint filed May 27, 2010 (Compl. (Doc. No. 1)) and any documents properly considered on this motion. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'"(quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir.2009))).

on the complaint. (*See id*. ¶ 98.)  Chen further alleges that various detainees had previously complained that Huang was mentally disturbed and a danger to their safety, but that the guards refused to move Huang from the cell. (*See id*. ¶¶ 55–56.)  More generally, Chen alleges that defendants did not employ reasonable measures to protect detainees from violence by failing to isolate mentally infirm detainees from the general population. (*See id.* ¶¶ 102–03.)

On May 27, 2010, Chen filed the instant complaint. (*See id*.)  Chen advances thirteen "counts" against the defendants, nine of which allege violations of Chen's rights under the U.S. Constitution. [3]  The remaining four allege violations of federal statutes, federal regulations, and state statutes.  By Memorandum and Order dated December 29, 2011, this Court dismissed all claims against the federal defendants, and dismissed Chen's injunctive relief claims as moot.  *See Chen*, 2011 WL 6837761, at *4–5, *10.  On November 30, 2012, Ahtna and Gaston, the remaining defendants,[4] filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard

---

[3] Though styled as "counts," plaintiff's allegations are civil claims.  The Court will continue to refer to them herein as "counts."

[4] Chen also names "Lieutenant Smith," "an officer assigned to guard the detainees at the Varick Detention Center" as a defendant. (*See* Compl. ¶ 23; *see also id*. ¶¶ 68, 124, 128.)  However, Lieutenant Smith has never appeared. On January 4, 2012, noting that it was unclear whether Smith had been individually served with a complaint, Magistrate Judge Lois Bloom directed Chen to effect proper service on Smith. (*See* 1/4/12 Scheduling Order.) Rather than re-attempt to serve Smith, Chen responded that a private process server served the summons on "LeShone Smith, who is designated by law to accept service of process on behalf of Lieutenant Smith G.S.A., 1800 F Street, NW, Washington, DC" and claimed that Smith served an Answer on July 29, 2010. (Pl's 1/18/12 Ltr. (Doc. No. 34).)  The July 29, 2010 Answer, however, was submitted only by Ahtna and Gaston. (*See* Def's Answer (Doc. No. 6).)  The proof of service offers no explanation as to who "LeShone Smith" is and how, if at all, that person is authorized to receive service of process for "Lieutenant Smith." (*See* Smith Executed Summons (Doc. No. 18).)  Given these circumstances, plaintiff has failed to provide sufficient proof of service as to Smith.  *See* Fed. R. Civ. P. 4(e).  Accordingly, all claims against this defendant are dismissed for failure to serve.  *See* Fed. R. Civ. P. 4(m).  Furthermore, even if Smith had been properly served, all claims against him require dismissal for the same reasons that justify dismissal of the claims against Gaston.  *See infra*.

of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive a motion to dismiss, a complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court "consider[s] the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In addition to considering the pleadings, the court may consider "documents attached to the pleadings as exhibits or incorporated by reference, and items of which judicial notice may be taken." *Daniels ex rel. Daniels v. Comm'r of Soc. Sec.*, 456 F. App'x 40, 41 (2d Cir. 2012) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

## DISCUSSION

### A. Constitutional Claims

#### 1. Applicable Law

Chen purports to bring suit against Ahtna and Gaston under 42 U.S.C. § 1983 for violations of his rights under the federal Constitution. (*See, e.g.*, Compl. ¶ 1.) However, that provision is not applicable because Ahtna and Gaston are private entities that were acting under the authority granted them by the federal government. *See Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir. 1991) ("An action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers."). Rather, Chen's constitutional claims are properly characterized as claims arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See La Ford v. Geo Grp., Inc.*, 13 CIV. 1978 BMC, 2013 WL 2249253, at *2

4

(E.D.N.Y. May 22, 2013) (characterizing pro se plaintiff's civil rights claims against private operator of a federal prison facility and private guards in that facility as *Bivens* claims); *see also Chao v. Holder*, No. 10-cv-2432, 2011 WL 6837761, at *3 (E.D.N.Y. Dec. 29, 2011) (noting that Chen's claims against the federal defendants were properly characterized as *Bivens* claims); (Pl's Br. (Doc. No. 49) at 4 (arguing that plaintiff "adequately pleads that a *Bivens* suit lies as against Defendants for violations of various constitutional rights")).

In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 66 (2001); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013). Nevertheless, the Supreme Court has rarely implied *Bivens* remedies, doing so in only three cases: 1) for violations of the Fourth Amendment based on illegal search and seizure, *see Bivens*, 403 U.S. at 389; 2) for violations of the Fifth Amendment's Due Process Clause based on gender discrimination, *see Davis v. Passman*, 442 U.S. 228, 248–249 (1979), and; 3) for violations of the Eighth Amendment based on inadequate medical care, *see Carlson v. Green*, 446 U.S. 14, 16 n.1, 17 (1980). Because *Bivens* is a judicially created remedy, federal courts have been reluctant to recognize *Bivens* claims in any new contexts. *See, e.g., Minneci v. Pollard*, 132 S. Ct. 617, 622, 181 L. Ed. 2d 606 (2012) ("Since *Carlson*, the Court has had to decide in several different instances whether to imply a *Bivens* action. And in each instance it has decided against the existence of such an action."); *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (explaining that "the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.'").

In two cases, the Supreme Court has considered whether to extend a *Bivens* remedy to a plaintiff in the privately run prison context. Both times it has declined to do so. First, in

*Correctional Services Corporation v. Malesko*, the Court considered whether *Bivens* "should be extended to allow recovery against a private corporation operating a halfway house under contract with the Bureau of Prisons." 534 U.S. at 63. The plaintiff, who was known to have a heart condition, suffered a heart attack after an employee of the halfway house forced him to use the stairs to access his room. *See id*. at 64. The plaintiff alleged that the private corporation was "negligent in failing to obtain requisite medication for [his] condition and w[as] further negligent by refusing [him] the use of the [facility's elevator]." *Id*. at 64–65.

The Supreme Court held that the plaintiff could not seek redress for the purported Eighth Amendment violation under *Bivens*. *Id*. at 74. The Court noted that "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," *id*. at 70, and concluded that extending *Bivens* to the private corporation "would not advance *Bivens*' core purpose of deterring individual officers from engaging in unconstitutional wrongdoing," *id*. at 74. Furthermore, the Court also noted that the plaintiff had alternative remedies that he could pursue, which in many respects were more attractive than the *Bivens* remedy, and thus was "not a plaintiff in search of a remedy as in *Bivens*." *See id*. 72–74. Thus, the Court concluded that "[t]he caution toward extending *Bivens* remedies into any new context, a caution consistently and repeatedly recognized for three decades, forecloses" plaintiff's *Bivens* claim against the private corporation. *Id*. at 74.

Next, in *Minneci v. Pollard*, the Supreme Court considered "whether [to] imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison." 132 S. Ct. at 620. The plaintiff, a prisoner in a privately run federal prison, claimed that prison employees failed to provide him adequate medical care. *See* 132 S. Ct. at 620–21. The Court held that the plaintiff could not assert a *Bivens* claim against the

6

prison employees. *Id*. at 623, 626. According to the court, the plaintiff's "Eighth Amendment claim focus[ed] upon a kind of conduct that typically falls within the scope of traditional state tort law," *id*. at 623, which "can help to deter constitutional violations as well as to provide compensation to a violation's victim," *id*. at 624. In *Minneci*, the plaintiff's claim arose in California, where the law provided for tort actions based upon "want of ordinary care or skill," "negligent failure to diagnose or treat," and "failure of one with a custodial duty to care for another to protect that other from 'unreasonable risk of physical harm.'" *Id*. at 624.[5] Finding that California tort law provided roughly similar deterrence and offered roughly similar compensation to victims, the Court concluded that where "a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law . . . the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case." *Id*. at 626.

The Second Circuit has applied *Minneci* to hold that whether to recognize a *Bivens* remedy "involves two inquiries: (1) whether there is any alternative, existing process for protecting the affected interest that amounts to a convincing reason for the Judicial Branch to refrain from providing a new [damages] remedy; and (2) whether, even in the absence of [such] an alternative, . . . any special factors counsel [ ] hesitation before authorizing a new kind of federal litigation." *M.E.S., Inc.*, 712 F.3d at 671 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550, (2007) (internal quotations omitted)); *see also Espinoza v. Zenk*, No. 10–cv–427, 2013 WL 1232208, at *8 & n. 12 (E.D.N.Y. Mar. 27, 2013) (considering whether plaintiff could maintain a

---

[5] The Court also noted that "California's tort law basically reflects general principles of tort law present . . . in the law of every State" and that "state law imposes general tort duties of reasonable care (including medical care) on prison employees in every one of the eight States where privately managed secure federal facilities are currently located." *Minneci*, 132 S. Ct. at 624.

7

*Bivens* claim against employees in a privately-run federal prison for purported First and Fifth Amendment violations by determining whether adequate state law remedies existed and whether any special factors counseled against applying *Bivens*); *LaFord*, 2013 WL 2249253, at *2 ("Although some courts have interpreted *Minneci* as barring all claims against employees of private prisons, at least one court in this District has taken the better approach of considering 'whether there are adequate state law remedies' for a plaintiff's claims in determining whether *Minneci* precludes those claims." (citing *Espinoza v. Zenk*)). With regard to the first inquiry, a state tort law remedy can be adequate to protect the constitutionally protected interest if "in general, [the] state tort law remedies provide roughly similar incentives for potential defendants to comply with the [Constitution] while also providing roughly similar compensation to victims of violations." *Minneci*, 132 S. Ct. at 625; *see also Espinoza*, 2013 WL 1232208, at *9; *LaFord*, 2013 WL 2249253, at *3.

## 2. Constitutional Claims Against Gaston

Here, Chen asserts a number of constitutional claims against Gaston, an Ahtna employee, related to his detention at the Varick Street Detention Facility. Defendants argue that because Gaston is a private employee, Chen's constitutional claims against her should be dismissed under *Minneci* since Chen has alternative remedies under New York law. (*See* Def's Br. (Doc. No. 48) at 7–8 (ECF Pagination).) In response, Chen argues that he lacks alternative remedies because he is unable to bring a § 1983 action, a claim under the Federal Tort Claims Act, a claim against the private employees because of N.Y. Corr. Law § 24, and because it is unclear whether Ahtna had internal remedial mechanisms that Chen could use.[6] (*See* Pl's Br. (Doc. No. 49) at 8–12.)

---

[6] Relatedly, Chen argues that the adequacy of alternative remedies is a question of fact that cannot be determined on a Rule 12(c) motion. (*See* Pl's Br. at 8–9, 11.) Chen is mistaken. Whether legal remedies exist and the scope of those remedies is a quintessential question of law that is suitable for resolution by the Court on a motion to dismiss.

8

Because the Court agrees with defendants, the Court declines to imply a *Bivens* remedy against Gaston and dismisses the constitutional claims.

Chen has alternative remedies under New York law for each of the nine constitutional claims asserted against Gaston. Count 1 of Chen's complaint alleges that defendants violated Chen's Fifth Amendment due process rights by continuing to detain him despite difficulties in obtaining travel documents from the Chinese government. (*See* Compl. ¶¶ 51–52.) This claim sounds in false imprisonment, a tort recognized under New York law. *See Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87 (1975) (listing elements of tort of false imprisonment under New York law).

Counts 2, 3, 4, 5 and 12 allege that defendants violated Chen's constitutional rights by failing to protect him from Huang's February 3, 2010 attack. (*See, e.g.*, Compl. ¶¶ 54–61; 63–79; 82–88; 93–103; 158–64.) Under New York law, "a correctional facility owes a duty of care to safeguard inmates, even from attacks by fellow inmates." *Qin Chen v. U.S.*, 494 F. App'x 108, 109 (2d Cir. 2012) (quoting *Sanchez v. State*, 784 N.E.2d 674, 678 (N.Y. 2002)); *see also Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 440–41 (E.D.N.Y. 2010) (denying motion for summary judgment on plaintiff's state law negligent failure to protect claim because genuine issue of material fact existed on question of foreseeability); *Barnette v. City of New York*, 945 N.Y.S.2d 749, 750–51 (N.Y. App. Div. 2012) (finding that municipal defendant was entitled to summary judgment on plaintiff's failure to protect claim because there was no evidence that attack by other inmate was foreseeable); *Smith v. Cnty. of Albany*, 784 N.Y.S.2d 709, 711 (3d

---

Indeed, the relevant authority that Chen relies on to support his position actually contradicts it, and demonstrates that district courts can decide whether alternative remedies exist by way of a motion to dismiss. *See Malesko*, 534 U.S. at 65–66 (discussing procedural history of appeal, which arose following a grant of a motion to dismiss); *Wilkie v. Robbins*, 551 U.S. 537, 548–49 (2007) (explaining that district court dismissed several of plaintiff's *Bivens* claims during motion to dismiss phase); *Arar*, 585 F.3d at 563–64 (noting that case was appealed following district court's dismissal of the complaint and affirming that decision (citing 414 F. Supp. 2d 250 (E.D.N.Y. 2006)).)

9

Dep't 2004) (affirming denial of summary judgment on inmate's failure to protect claim). Thus, Chen could pursue his claims in Counts 2, 3, 4, 5, and 12 through a negligence action under New York law.

Count 6 alleges violations of Chen's Eighth Amendment rights based on inadequate medical care, claiming that defendants were aware of the serious injury Chen suffered as a result of the attack but failed offer Chen treatment or bring Chen to follow up medical appointments. (*See* Compl. ¶¶ 105–14.) Count 7 advances a Fifth Amendment challenge to the conditions of Chen's confinement which "engendered violence and psychiatric problems" and led to the February 3 attack. (*See* Compl. ¶¶ 116–22.) Both claims are provided for under state law.

Under New York law, it is well established that a tortfeasor is liable for the normal and foreseeable consequences of his actions. *See, e.g.*, *Gordon v. E. Ry. Supply, Inc.*, 626 N.E.2d 912, 916 (N.Y. 1993); *Derdiarian v. Felix Contracting Corp.*, 414 N.E.2d 666, 670 (N.Y. 1980); *see also* 14 Lee S. Kreindler et al., N.Y. Prac., New York Law of Torts § 8:9 (2013); 16 Lee S. Kreindler et al., N.Y. Prac., New York Law of Torts § 21:8 (2013). Thus, Chen could seek to recover for all injuries suffered as a result of receiving inadequate medical care or being subjected to dangerous confinement conditions by establishing that defendants were negligent in safeguarding him from attacks from other detainees. *See, e.g.*, *Derby v. Prewitt*, 187 N.E.2d 556, 558 (N.Y. 1962) ("It is settled that a wrongdoer is liable for all of the proximate results of his own tortious act, including (in a case such as the present) the aggravation of the original injury caused by the negligence of the physician.").

Finally, Count 11 alleges a violation of Chen's substantive due process rights as a result of Ahtna's alleged failure to properly hire and train guards for its Varick Street facility. (*See* Compl. ¶¶ 147–156.) New York recognizes a tort for negligent hiring and supervision. *See*

*Travis v. United Health Servs. Hosps., Inc.*, 804 N.Y.S.2d 840, 841 (N.Y. App. Div. 2005) (stating that to maintain a negligent hiring and supervision claim, plaintiff must show "that defendant knew of the employee's propensity to [commit the alleged acts] or that defendant[] should have known such propensity had [it] conducted an adequate hiring procedure."); *Talavera v. Arbit*, 795 N.Y.S.2d 708, 709 (N.Y. App. Div. 2005) (noting that a plaintiff may maintain a cause of action for negligent hiring and retention, even where an employee was acting within the scope of his employment, if the plaintiff is seeking punitive damages from the employer based on gross negligence in the hiring or retention of the employee); *Scainetti v. U.S. ex rel Fed. Bureau of Prisons*, No. 01-cv-9970, 2002 WL 31844920, at *4 (S.D.N.Y. Dec. 18, 2002) (allowing state law claims against private prison operator arising out of employee's sexual assault of inmates to proceed under "a theory of ordinary negligence.").

These state law remedies provide roughly similar incentives for potential defendants to comply with the Constitution. Chen's complaint centers on defendants' purported failure to protect Chen from Huang's February 3, 2010 attack. To prove an Eighth Amendment violation based on this conduct, (*see, e.g.*, Compl. ¶¶ 62–79), Chen would have to show that defendants acted with "deliberate indifference." *See, e.g., Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). To show a substantive due process violation based on this conduct, (*see, e.g.*, Compl. ¶¶ 89–103), Chen would have to prove that the conduct at issue was so offensive that it "shocks the conscience." *See, e.g., Smith ex rel. Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002). By contrast, to recover under state law, Chen would only need to demonstrate that defendants were negligent. Since negligent conduct is less culpable than conduct that is done with "deliberate indifference" or conduct that "shocks the conscience," *see Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("deliberate indifference describes a state of mind

11

more blameworthy than negligence"); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"), the alternative remedies under New York law actually provide more of an incentive for privately employed prison guards to safeguard inmates than *Bivens* does. *Cf. Malesko*, 534 U.S. at 72–73 (noting that plaintiff had alternative remedies under state law which were "at least as great, and in many respects greater" than *Bivens* and finding plaintiff's decision to try to proceed under *Bivens* "ironic" since doing so "would make it considerably more difficult for respondent to prevail than on a theory of ordinary negligence.").

These state law remedies also provide similar compensation to victims. Under New York law, a victim could obtain compensatory damages and, as with *Bivens*, punitive damages with the requisite showing of malicious intent. *See, e.g.*, *Carlson*, 446 U.S. at 21–22 (indicating that, in addition to compensatory damages, punitive damages may be awarded in a *Bivens* suit with a showing of malicious intent); *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 196 (N.Y. 2007) (noting that punitive damages are available under New York law when defendant's wrongdoing "evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations."); *McDougald v. Garber*, 536 N.E.2d 372, 374 (N.Y. 1989) (explaining that the purpose of compensatory damages in tort actions "is to restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred").

In short, Chen has available alternative remedies under New York law to challenge Gaston's conduct and protect his effected interests.[7] Because these alternative state law remedies

---

[7] Chen's contention that he lacks alternative remedies because § 1983, the FTCA and New York Correction Law remedies are unavailable to him lack merit. Since, as discussed above, Chen has alternative remedies under New York tort law, it is immaterial whether he cannot seek redress through those other statutes.

12

constitute "a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," *Minneci*, 132 S. Ct. at 623 (quotations and citation omitted), the Court concludes that Chen cannot assert a *Bivens* claim in this case. Accordingly, the constitutional claims asserted against Gaston in Counts 1–7 and 11–12 of Chen's complaint are dismissed. *Cf. LaFord*, 2013 WL 2249253, at *3 (dismissing *Bivens* claims asserting violations of the Fourth, Fifth and Fourteenth Amendments because New York tort law provided adequate remedies for plaintiff's alleged injuries).

### 3. Constitutional Claims Against Ahtna

Defendants argue that Chen's claims against Ahtna, a private corporation, are barred under *Malesko* and that, in any event, *Bivens* should not be extended here since alternative remedies exist under state law. (*See* Def's Br. (Doc. No. 48) at 5–6 (ECF Pagination).) The Court agrees. As in *Malesko*, implying a *Bivens* action against Ahtna would not advance *Bivens*' core purpose of deterring individual officers from engaging in constitutional wrongdoing.

Furthermore, Chen has available alternative remedies under New York law against Ahnta. In particular, an employer is vicariously liable for the tortious acts of its employees under a theory of *respondeat superior* if those acts were committed in the furtherance of the employer's business and within the scope of employment. *See, e.g., Burlarley v. Wal-Mart Stores, Inc.*, 904 N.Y.S.2d 826, 827 (N.Y. App. Div. 2010). Thus, Chen could hold Ahtna liable if it could prove that Gaston was negligent in failing to protect him from Huang's attack and that she was negligent while acting within the scope of her employment.[8] Thus, the constitutional claims asserted against Ahtna in counts 1–7 and 11–12 of Chen's complaint must be dismissed.

---

[8] By contrast, Chen would be unable to take this approach under *Bivens*. *See Minneci*, 132 S. Ct. at 625 ("And a *Bivens* plaintiff, unlike a state tort law plaintiff, normally could not apply principles of *respondeat superior* and thereby obtain recovery from a defendant's potentially deep-pocketed employer.").

*See, e.g., Bender v. General Servs. Admin.*, 539 F. Supp. 2d 702, 708 (S.D.N.Y. 2008) ("As a private corporation operating under contract with the federal government, [the defendant here] is in all material respects in the same position as the defendant in *Malesko*, and it is therefore not subject to a *Bivens* action."); *LaFord*, 2013 WL 2249253, at *2 ("[P]laintiff's *Bivens* claims must also fail because the United States Supreme Court has refused to extend the *Bivens* cause of action to lawsuits against private prison operators acting under color of federal law. . . . Thus plaintiff's *Bivens* claims against [the private prison operator] are foreclosed by *Malesko*."); *Megna v. Food & Drug Admin.*, No. 08-cv-1435, 2009 WL 749900, at *7 (E.D.N.Y. Mar. 17, 2009) ("In short, under *Malesko,* no *Bivens* claim exists against the [defendants] . . . for which numerous alternative remedies against the [defendants] exist elsewhere, including in state court."); *Haughton v. Burroughs*, No. 98-cv-3418, 2004 WL 330242, at *4 (S.D.N.Y. Feb. 23, 2004) ("Applying the *Malesko* holding to the case at bar, it is clear that [plaintiff] cannot bring a *Bivens* action against either [defendant], both of which are private corporations. It is likewise clear that he has pursued numerous alternative causes of action, such that here is little need to allow [plaintiff] to assert a *Bivens* claim against [the defendants]"); *Orellana v. World Courier, Inc. et al*, No. 09-cv-576, 2010 WL 3023528, at *3 (E.D.N.Y. Jul. 29, 2010) ("Even if [plaintiff] had pleaded a *Bivens* claim against [the defendant], the claim would have to be dismissed for failure to state a claim; [the defendant] is a private entity."); *Shaw v. Lopez*, No. 304-cv-787, 2004 WL 1396698 (D. Conn. Jun. 17, 2004) ("A private corporation operating a prison is not subject to suit under *Bivens*.").

### B. Remaining Claims

Chen's remaining claims also warrant dismissal. In Count 8 of the complaint, Chen alleges that Gaston and Lieutenant Smith were "in conspiracy with each other and with other

guards at the detention facility to conceal the violations of ICE policy that resulted in plaintiff's injuries." (Compl. ¶ 124.) Chen styles this claim as a "Conspiracy to Interfere with Civil Rights, 42 USCA § 1983." (*Id*. at 14 (ECF Pagination).) To state a § 1983 conspiracy claim involving a private party, as here, a plaintiff must allege, "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal; (4) which causes harm to the plaintiff." *Morpurgo v. Incorporated Village of Sag Harbor*, 697 F. Supp. 2d 309, 337 (E.D.N.Y. 2010); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) ("To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." (quotations omitted)). On the face of his complaint, Chen has made no allegations that Gaston, Smith or any of the other guards conspired with a state actor[9] in order to inflict constitutional injury upon him. Furthermore, Chen has failed to offer any specific allegations describing the details of the alleged conspiracy. Therefore, he has failed to state a § 1983 conspiracy claim that is plausible on its face, and this claim must be dismissed. *See Ciambriello*, 292 F.3d at 324–25.

In Count 9, Chen alleges that defendants "failed to properly classify and segregate the detainees based on their mental condition" in violation of 18 U.S.C. § 4081. (*See* Compl. ¶ 134.) However, there is no private right of action for damages under 18 U.S.C. § 4081. *See Moriani v. Hunter*, 462 F. Supp. 353, 355 (S.D.N.Y. 1978); *Resnick v. Ferris*, No. C 91-0174, 1991 U.S. Dist. LEXIS 4905, at *4 (N.D. Cal. Apr. 10, 1991); *cf. Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control these conditions of

---

[9] Again, it is well established that a federal official is not a "state actor" for the purposes of § 1983. *See, e.g., Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir. 1991) ("An action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers"). As they were contractors with the federal government, Ahtna, Gaston and the other guards at the Varick Street Detention Facility were not state actors for the purposes of § 1983.

15

confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980) ("[U]nder Title 18 U.S.C. §§ 4081 and 4082 the Attorney General has complete and absolute discretion with respect to the incarceration, classification and segregation of lawfully convicted prisoners."). Therefore, Chen's claim in Count 9 fails.

In Count 10, Chen alleges that defendants violated 8 C.F.R § 212.5(b) since "[d]etainee Huang should not have been detained in the detention facility because he had a serious medical condition that made continued detention inappropriate . . . ." (Compl. ¶ 144.) Even if 8 C.F.R. § 212.5(b) gives rise to a cause of action, Ahtna and Gaston lacked the authority to parole Huang under the regulations. *See* 8 C.F.R. § 212.5(a) (listing officials with authority to grant parole to an alien in custody). Therefore, any such claim cannot lie against these defendants.

Finally, in Count 13, Chen alleges that the defendants "did not employ proper classification procedures for the Varick Street Detention Center" and "failed to take measures necessary for the safety [,] security and control of the facility and the maintenance of order" in violation of N.Y. Correction Law § 137. (Compl. ¶¶ 166, 171.) First, the Correction Law applies to facilities operated by the New York State Department of Correctional Services, this not being one of them. Moreover, in his opposition, plaintiff, in essence, concedes that this section does not provide him with a remedy, arguing that the inapplicability of state law, including section 137, "only serve[s] to illustrate that Plaintiff does not have recourse to vindicate his constitutional rights as against Defendants, except via *Bivens*." (Pl.'s Br. (Doc. No. 49) at 14.) Thus, this claim also fails.

16

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings as to defendants Officer Gaston and Ahtna Technical Services is GRANTED, and all claims against them are DISMISSED, and further, all claims against defendant Lieutenant Smith are hereby DISMISSED. Judgment shall enter accordingly. As this Memorandum and Order dismisses all remaining claims as against all remaining parties, [10] the Clerk of Court is further directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       August 16, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[10] All claims against the federal defendants were previously dismissed by order of this Court (Doc. No. 33), and all claims against defendant Corrections Corporation of America were dismissed by stipulation of the parties (Doc. No. 4).